IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JASON FRAZIER    :  CIVIL ACTION
          :
  v.       :
          :
TOMMY DANIELS, et al.  :  No. 09-3612


Legrome D. Davis, J             May 20, 2010

<u>MEMORANDUM</u>

I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

   This matter arises out of alleged constitutional violations that were committed by prison

officers and staff against Plaintiff Jason Frazier while he was incarcerated in the State

Correctional Institute of Graterford ("SCI-Graterford").[1]  On May 21, 2008, an inmate and a

prison officer were fighting on Plaintiff's cellblock.  When two corrections officers, Defendants

Tommy Daniels and Jennie White, ran to assist, Plaintiff grabbed Daniels to prevent him from

jumping on the fighting inmate.  (Compl. ¶¶ 1-3.)  According to Plaintiff, he did not touch

anyone else, and as he and Daniels were "going to the floor," White jumped on Plaintiff.  (Id. at ¶

4.)  As a result of this incident, Plaintiff received two misconduct reports.[2]  (Id. at ¶¶ 6, 9.)  On

May 23, 2008, a hearing was held before Defendant Hearing Officer Mary Canino, who found

Plaintiff guilty of all charges, and punished Plaintiff to a total of 810 days of disciplinary custody

in the Restrictive Housing Unit ("RHU").  (Id. at ¶¶ 14, 16-19.)  Plaintiff appealed this ruling to

---

[1]  Plaintiff is presently confined in State Correctional Facility of Montgomery County.

[2]  Plaintiff was charged with assault, aggravated assaulted, threatening an employee,
refusing to obey an order, unauthorized group activity, and presence in an unauthorized area.
(Compl. ¶¶ 6, 9.)

the Program Review Committee, Defendant SCI-Graterford's Superintendant David DiGugliemlo, and the Chief Hearing Examiner. Canino's rulings were upheld. (Id. at ¶¶ 22-23.)

When Plaintiff arrived in RHU, Defendant Unit Manager Sylvia Pallott, placed him on an "administrative custody" wing in a cell that was secluded from others, and put a tag on Plaintiff's door that read, "Assault on Staff." (Id. at ¶ 25.) According to Plaintiff, from May 22, 2008 to June 11, 2008, the following deprivations occurred: Plaintiff was denied food by Defendants corrections officers Thomas McMichael, Tony Butler, Donald Vaughn Jr., John Everding, Fred Toluba, and Joshua Marsh,[3] (id. at ¶¶ 26, 29); he was denied clean underclothing by these Defendants and Pallott, (id. at ¶ 34); and he was denied a shower by Vaughn, Everding, Toluba, and Marsh, (id. at ¶ 31). On May 25, 2008, Plaintiff claims that Defendant Everding spit into a food tray before giving it to Plaintiff, stating, "You can't put your hands on an officer and not get a 'grind up.'" (Id. at ¶¶ 36-37.) Additionally, Plaintiff asserts that from May 22, 2008 to June 7, 2008, he was denied his one hour per day of yard time by Butler and McMichael, (id. at ¶ 28), and from May 22, 2008 to July 12, 2008, he was denied access to the law library by Butler, McMichael, Pallott, Vaughn, Everding, Toluba, and Marsh, (id. at ¶ 39).

Plaintiff sent a letter to the Department of Corrections Office of Professional Responsibility ("OPR") about these conditions, and on August 4, 2008, an officer from OPR interviewed Plaintiff. (Id. at ¶¶ 45-46.) According to Plaintiff, Pallott and the corrections officers on the RHU wing first learned of Plaintiff's grievances because of this interview, and following the interview, they began to retaliate against Plaintiff. (Id. ¶ 47.) Plaintiff claims that

---

[3]     Specifically, Plaintiff was denied all of his meals from May 22, 2008 to June 7, 2008, and denied dinner from June 7, 2008 to June 11, 2008. (Compl. ¶¶ 26-29.)

on August 17, 2008, Vaughn denied Plaintiff his dinner, telling Plaintiff that he "shouldn't have filed that paperwork on us!" (Id. at ¶¶ 49, 52.) And, following a meeting with OPR on August 27, 2008, Defendant corrections officer Michael Wassel took Plaintiff's dinner tray from his cell while Defendant corrections officer Kevin MacGregor observed.[4] (Id. at ¶¶ 53, 55, 57.) On August 28, 2008, Plaintiff woke up "starving, dizzy, lightheaded, weak, and experiencing pain in his stomach," and he later collapsed in front of his cell. (Id. at ¶ 59-60.) An officer found him, and when he reported it to Pallott, she told the officer to put a sickcall slip in Plaintiff's door and leave him on the floor. (Id. at ¶¶ 61-62.) Four hours later, Plaintiff was semi-conscious and taken to the dispensary in a wheelchair, where he received an EKG. (Id. at ¶¶ 65-66.) Thereafter, Defendant Dr. McDonald placed Plaintiff in a "hardcell" on suicide watch with a smock, a psych blanket, and a "food loaf." (Id. at ¶ 67.) Plaintiff returned to the RHU on August 29, 2008, where Defendant corrections officer Henry Sutton stated, "We're gonna make sure you die down here for what you've done . . . ." (Id. at ¶ 71.) Plaintiff was moved to another RHU cellblock, but Sutton continued to threaten Plaintiff and attempted to solicit another inmate to throw a cup of urine on Plaintiff. (Id. at ¶¶ 74-75.)

Plaintiff also alleges that his personal property, including all of his legal materials, were tampered with by Defendants corrections officers Patrick Curran and Walter Grunder. When Plaintiff was initially taken to RHU, officers on his old housing block packed and inventoried Plaintiff's property without Plaintiff present. (Compl. ¶¶ 87-88; Inventory List, May 22, 2008, Compl. Ex. K.) The property was taken to the property room and stored under Curran's

---

[4]     In his Complaint, Plaintiff refers to Defendant MacGregor as "McGregor." The Commonwealth Defendants correctly spell his name as "MacGregor" in their Motion to Dismiss, and Plaintiff does as well in his Response thereto.

supervision.  (Compl. ¶ 92.)  From May 2008 through September 2008, Plaintiff sent request

slips to the property room for his legal materials, as the time period to file his federal habeas

petition was soon expiring, but he never received a response.  (Id. at ¶¶ 93-95.)  Both Plaintiff

and a lieutenant checked his property for the legal materials, but neither found the documents.

(Id. at ¶¶ 99, 102.)  A fellow inmate assisted Plaintiff in preparing a new habeas petition using

two old direct appeal briefs, which Plaintiff filed but did not think was adequate.  (Id. at ¶¶ 105,

109.)  Plaintiff asserts that he recently discovered that he had an allegedly meritorious claim of

ineffective assistance of counsel that was raised in his Post Conviction Relief Act ("PCRA")

petition, but it was not included in his habeas petition because he was unaware of it without

access to his legal materials.  (Id. at ¶ 119.)  Plaintiff also noticed that some of his missing

personal property was replaced with items substantially similar to his own.  (Id. at ¶¶ 106-07,

110, 112.)

        As a result of these incidents, Plaintiff filed grievance reports with OPR.  (Id. at ¶ 83;

OPR Grievances, Compl. Ex. J & U.)  The grievances were denied.  Plaintiff appealed the OPR's

decision to DiGuglielmo and the Chief Secretary's Office of Inmate Grievances and Appeals.

(Compl. ¶ 83.)  When his appeals were denied, Plaintiff filed the instant action pursuant to 42

U.S.C.§ 1983 against Defendants DiGuglielmo, Canino, Pallott, Daniels, White, Butler,

Everding, Toluba, Marsh, Wassel, McMichael, MacGregor, Sutton, Curran, Grunder, Vaughn,

and McDonald.  Plaintiff alleges that Defendants violated his Eighth, Fourteenth, and Sixth

Amendment rights, as well as his right to access the courts, and that Defendants retaliated against

him and conspired against him in committing these violations.  Presently before this Court are

Defendant McDonald's Motion to Dismiss (Doc. Nos. 14 & 15), the Commonwealth

Defendants' Motion to Dismiss (Doc. No. 22), and Defendant Vaughn's Motion to Dismiss

(Doc. No. 30).[5]  For the following reasons, Defendants' Motions are granted in part and denied in

part.

## II.    LEGAL STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  When evaluating a motion to dismiss brought pursuant to

Federal Rule of Civil Procedure 12(b)(6), "the facts alleged [in the complaint] must be taken as

true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff

can prove those facts or will ultimately prevail on the merits."  Phillips v. County of Allegheny,

515 F.3d 224, 231 (3d Cir. 2008).  A court must draw all reasonable inferences in favor of the

plaintiff.  Id.  Moreover, "[a court] liberally construe[s] the pleadings of pro se litigants."  Cann

v. Hayman, 346 F.3d 822, 824 (3d Cir. 2009) (citing Erickson v. Pardus, 551 U.S. 89, 94 (2007)).

However, "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly,

550 U.S. at 570).  "The plausibility standard 'asks for more than a sheer possibility that a

defendant has acted unlawfully.'"  Miles v. Twp. of Barnegat, 343 F. App'x 841, 844 (3d Cir.

2009) (quoting Iqbal, 129 S. Ct. at 1949).  "A claim has facial plausibility when the plaintiff

---

[5]      The Commonwealth Defendants' Motion to Dismiss was filed on behalf of Defendants
DiGuglielmo, Canino, Pallott, Daniels, White, Butler, Everding, Toluba, Marsh, Wassel,
McMichael, MacGregor, Sutton, Curran, and Grunder.  However, for purposes of this
Memorandum, "Commonwealth Defendants" refers to the above-listed Defendants and
Defendant Vaughn.

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949). "The assumption of truth does not apply . . . to legal conclusions couched as factual allegations or to '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" Miles, 343 F. App'x at 845 (quoting Iqbal, 129 S. Ct. at 1949).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950. In making this determination, the court may look to the allegations made in the complaint, the exhibits attached to the complaint, and any documents whose authenticity no party questions and whose contents are alleged in the complaint. Pryor v. Nat'l Coll. Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). Documents attached to a defendant's Rule 12(b)(6) motion to dismiss may only be considered if they are referred to in the plaintiff's complaint and if they are central to the plaintiff's claims. Id. "Courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient." Century Indem. Co. v. URS Corp., No. 08-5006, 2009 WL 2446990, at *4 (E.D. Pa. Aug. 7, 2009) (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).

III.    DISCUSSION[6]

---

[6]    In addition to the claims discussed herein, Plaintiff also asserts the following claims: (1) Defendant Pallott was deliberately indifferent to his medical needs by intentionally delaying his access to a doctor in violation of the Eighth Amendment, (Compl. ¶¶ 62-63); (2) Defendant DiGuglielmo was deliberately indifferent to his medical needs in violation of the Eighth Amendment by implementing a policy that permits non-medical personnel to exercise their judgment in determining whether a prisoner needs medical treatment, (id. at ¶ 64); (3) Defendant DiGuglielmo failed to "thoroughly investigate" the alleged deprivations that occurred in violation

A.    Eighth Amendment Claims

Plaintiff asserts a variety of Eighth Amendment violations related to his confinement at

SCI-Graterford.  To establish an Eighth Amendment violation, an inmate must allege both: (1) an

objective element, that "the deprivation is 'sufficiently serious' such that the prison official's act

or omission resulted 'in the denial of the minimal civilized measure of life's necessities;'" and

(2) a subjective element, that "the prison official has a 'sufficiently culpable state of mind,' that

of deliberate indifference to inmate health or safety."  Booth v. Pence, 354 F. Supp. 2d 553, 558-

59 (E.D. Pa. 2005) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  "Life's necessities"

include "food, clothing, shelter, sanitation, medical care and personal safety."  Booth, 354 F.

Supp. 2d at 559 (quoting Griffin v. Vaughn, 112 F.3d 703, 709 (3d Cir. 1997)).  We consider

each of Plaintiff's Eighth Amendment claims in turn.

1.    False Charges and Disciplinary Action

Plaintiff alleges that Defendants Daniels and White violated the Eighth Amendment

following the incident on May 21, 2008, when Daniels falsified misconduct reports on behalf of

himself and White, and when White reported false accounts to Daniels.  (Compl. ¶¶ 8, 11-12.)

The Commonwealth Defendants argue that Plaintiff has failed to state a cause of action because

these charges are "essentially words" and "[do] not rise to the level of a deprivation of a basic

human need."  (Commonwealth Defs.' Mem. 5-6.)  We agree.  Under the Eighth Amendment,

"false misconduct charges are not 'sufficiently serious' that they result 'in the denial of the

_____

of the Eighth Amendment, (id. at ¶ 77); and (4) Defendant DiGuglielmo violated Plaintiff's
Fourteenth Amendment right to procedural due process by implementing a policy that permits
corrections officers to search an inmate's cell without an inmate or camera present, (id. at ¶ 125).
The Commonwealth Defendants do not challenge these in their Motion, and therefore this Court
does not review them at this time.

minimal civilized measure of life's necessities.'" <u>Booth</u>, 354 F. Supp. 2d at 559 (quoting

<u>Farmer</u>, 511 U.S. at 834).  Furthermore, although Plaintiff correctly argues that we may consider

whether, when "viewing the totality of the conditions of the prison, the inmate's conditions of

confinement, alone or in combination, deprive him of the minimal civilized measures of life's

necessities," <u>see</u> <u>Booth v. King</u>, 228 F. App'x 167, 171 (3d Cir. 2007) (citing <u>Tillery v. Owens</u>,

907 F.2d 418, 426-27 (3d Cir. 1990)), Plaintiff's argument as it relates to this claim must fail.

"Conditions are to be evaluated independently unless 'they have a mutually enforcing effect that

produces the deprivation of a single, identifiable, human need such as food, warmth, or

exercise.'" <u>Williams v. Campbell</u>, No. 07-885, 2008 WL 2816089, at *3 (E.D. Pa. July 18,

2008) (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 304 (1991)).  Plaintiff's allegations do not satisfy

this criteria.  Moreover, rather than asking this Court to review conditions of confinement in

combination, Plaintiff asks this Court to consider the consequences of this deprivation as it

resulted in other deprivations, which is not the standard.  Therefore, Plaintiff fails to state an

Eighth Amendment claim against Defendants Daniels and White.

Plaintiff alleges that Defendant Canino violated the Eighth Amendment by punishing him

with 810 days of disciplinary custody in RHU on the false charges brought by Defendants

Daniels and White.  (Compl. ¶ 21.)  Similarly, Plaintiff claims that Defendant Pallott violated his

Eighth Amendment rights by housing him in a secluded cell separated from other inmates, and

placing a "nametag" on his door that stated "assault on staff" to encourage harassment by the

prison officials.  (<u>Id.</u> at ¶ 25.)  The Commonwealth Defendants argue that Plaintiff has failed to

state a claim against Canino and Pallott on these allegations because lengthy stays in

administrative custody have been found to be constitutional, and administrative custody and

disciplinary custody are substantially similar.  (Commonwealth Defs.' Mem. 7-8.)  This Court

agrees with the Commonwealth Defendants.

"[B]eing placed in various forms of disciplinary confinement . . . fails to constitute an

Eighth Amendment violation."  Swinson v. Dep't of Corrs., No. 07-26, 2009 WL 33330, at *10

(W.D. Pa. Jan. 5, 2009) (citing Gibson v. Lynch, 652 F.d 348, 352 (3d Cir. 1981)); see also

Mearin v. Dohman, No. 06-4859, 2009 WL 3127760, at *11 (E.D. Pa. Sept. 29, 2009) (finding

ten months in SCI-Graterford's RHU not to be a deprivation in violation of the Eighth

Amendment (citing Griffin, 112 F.3d at 709)).  Moreover, words or verbal threats do not

constitute an Eighth Amendment violation.  See Shaw v. Freeman, No. 09-7478, 1991 WL

225010, at *3 (E.D. Pa. Oct. 29, 1991); see also Ingram v. Donate, No. 08-0407, 2008 WL

2780648, at *2 (M.D. Pa. July 16, 2008) ("Generally, words alone, verbal threats and harassment,

are insufficiently serious as to implicate the Eighth Amendment.") (collecting cases).  Plaintiff

asks this Court to consider his placement in RHU in combination with the other deprivations

alleged, but for the reasons explained above, this argument fails.  Thus, Plaintiff's Eighth

Amendment claims as to his confinement against Defendants Canino and Pallott are dismissed.

Plaintiff next contends that Defendant DiGuglielmo violated the Eighth Amendment by

not correcting Defendant Canino's decision to place Plaintiff in disciplinary custody.  (Compl. ¶

23.)  The Commonwealth Defendants argue that Plaintiff's Eighth Amendment claim against

DiGuglielmo must be dismissed because Plaintiff has not alleged that DiGuglielmo was

personally involved in the misconduct.  (Commonwealth Defs.' Mem. 4.)  "Respondeat superior

cannot form the basis of liability under 42 U.S.C. § 1983."  Hinterlong v. Hill, No. 05-5514,

2006 WL 2303106, at *3 (E.D. Pa. Aug. 8, 2006) (quoting Urrutia v. Harrisburg County Police

Dep't, 91 F.3d 451, 456 (3d Cir. 1996)).  "[F]or a supervisor to face responsibility, she must be personally involved in the alleged wrongs."  Kantamanto v. King, 651 F. Supp. 3d 313, 326 (E.D. Pa. 2009).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," and these allegations "must be made with appropriate particularity."  Id. (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).  Plaintiff's claim against DiGuglielmo is based only on DiGuglielmo's supervisory role and his approval of Canino's disciplinary decision.  However, because we conclude that Plaintiff has not alleged an Eighth Amendment violation against Defendant Canino, as placement in disciplinary custody does not constitute an Eighth Amendment violation, Plaintiff's claim against Defendant DiGuglielmo for approving placement in disciplinary custody must also be dismissed.  See Bey v. Pa. Dep't of Corrs., 98 F. Supp. 2d 650, 664 (E.D. Pa. 2000) (dismissing claim that superintendent was liable for approving plaintiff's transfer to another prison because underlying claim that the transfer violated his constitutional rights lacked merit).

### 2.     Conditions of Confinement

Plaintiff claims that from May 22, 2008 to June 11, 2008, Defendants Pallott, McMichael, Butler, Vaughn, Everding, Toluba, and Marsh deprived Plaintiff of food, clean underclothing, showers, and his allotted one hour per day of yard time, all in violation of his Eighth Amendment rights.[7]  (Compl. ¶¶ 26, 31, 34.)  According to Plaintiff, these actions were

---

[7]      As set forth in Section I, Plaintiff's allegations against these Defendants vary in terms of which deprivations they allegedly committed and when the deprivations occurred.  Because the Commonwealth Defendants' defenses to Plaintiff's Eighth Amendment claims and Plaintiff's responses thereto are substantially similar, this Court combines Plaintiff's allegations for purposes of our review.

taken in response to Plaintiff's alleged assault on an officer.  The Commonwealth Defendants

argue that Plaintiff's Eighth Amendment claims against the above-named Defendants must be

dismissed for failure to state a cause of action because Plaintiff's allegations do not rise to the

level of constitutional violations as they were only temporary deprivations.  (Commonwealth

Defs.' Mem. 10-11; Def. Vaughn's Mem. 5-7.)  This Court finds that Plaintiff has stated an

Eighth Amendment claim with respect to all of these deprivations.  Plaintiff has alleged that

Pallott, McMichael, Butler, Vaughn, Everding, Toluba, and Marsh deprived Plaintiff of

substantially all of his meals, showers, clean clothing, and recreation time for three weeks, which

constitute "denial[s] of the minimal civilized measure of life's necessities."  See Booth, 354 F.

Supp. 2d at 558-59 (quoting Farmer, 511 U.S. at 834); see also Gattis v. Phelps, 344 F. App'x

801, 804 (3d Cir. 2009) ("The denial of exercise or recreation may result in a constitutional

violation," if a plaintiff "demonstrate[s] that such a denial is sufficiently serious to deprive

inmates of the minimal civilized measure of life's necessities." (citing Peterkin v. Jeffes, 855

F.2d 1021, 1031-33 (3d Cir. 1988), and Tillman v. Lebanon County Corr. Facility, 221 F.3d 410,

418 (3d Cir. 2000))).  Plaintiff has also alleged that he told Pallott, McMichael, Butler, Vaughn,

Everding, Toluba, and Marsh about these deprivations and that they ignored his complaints,

thereby satisfying the "deliberate indifference" component.  (Compl. ¶¶ 27, 29, 32, 34-35); see

Bacon v. Carroll, 232 F. App'x 158, 160 (3d Cir. 2007) (explaining that prison official can be

held liable under Eighth Amendment if he "knows that inmates face a substantial risk of serious

harm and disregards that risk by failing to take reasonable measures to abate it" (quoting Farmer,

511 U.S. at 847)).  Thus, at this stage of the litigation, Plaintiff has sufficiently pled that these

Defendants violated his Eighth Amendment rights to humane conditions of confinement.

However, Plaintiff's Eighth Amendment claims against Defendants Wassel, MacGregor, and Sutton are dismissed. Plaintiff alleges that Wassel took his dinner away before he had an opportunity to eat and that MacGregor watched without interfering. (Compl. ¶¶ 54, 57.) Although a substantial deprivation of food can result in an Eighth Amendment violation, "[t]he purported deprivation of a single meal is not of such magnitude as to rise to the level of a constitutional violation." Lindsey v. O'Connor, 327 F. App'x 319, 321 (3d Cir. 2009). Plaintiff claims that Sutton violated the Eighth Amendment by verbally antagonizing him and attempting to solicit another inmate to "splash" Plaintiff with urine. (Compl. ¶¶ 71-75.) However, "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment." Id. Moreover, Sutton's attempted assault did not result in any deprivation to Plaintiff and thus is not a violation of the Eighth Amendment.

### 3. Medical Treatment

Plaintiff claims that Defendant McDonald was deliberately indifferent to his medical needs when he arrived in the dispensary on August 28, 2008, and subjected him to torture, abuse, and possibly conspired retaliation," in violation of the Eighth Amendment. (Compl. ¶¶ 67-68, 70.) McDonald argues that Plaintiff's claim must be dismissed because Plaintiff did not allege a serious medical need and Plaintiff merely disagrees with the treatment provided to him.[8] (Def.

---

[8]     Defendant McDonald also argues that Plaintiff's claim against her must be dismissed for failure to exhaust administrative remedies, as required under the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), because her name was not included in Plaintiff's grievances. (Def. McDonald's Br. 2-3.) This Court finds that Plaintiff has exhausted his administrative remedies with respect to this claim. In his grievance filed on September 4, 2008, Plaintiff explains in detail his medical condition on August 28, 2008 and the treatment he received by the "medical staff" at the dispensary. (Grievance No. 242054, Sept. 4, 2008, Compl. Ex. J-4.) Although Plaintiff does not mention Defendant McDonald, the response to Plaintiff's grievance specifically names Defendant McDonald as a doctor who treated Plaintiff, which is sufficient to

McDonald's Br. 5.) "The Eighth Amendment's prohibition on cruel and usual punishment[]

proscribes deliberate indifference to prisoners' serious medical needs." Ham v. Greer, 269 F.

App'x 149, 151 (3d Cir. 2008) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). "[T]o state a

claim against prison officials under the Eighth Amendment, the prisoner must allege both (1) the

existence of serious medical needs; and (2) the official's deliberate indifference to those needs."

Id. (citing Rouse v. Plantier, 182 F.2d 192, 197 (3d Cir. 1999)). "To act with deliberate

indifference to serious medical needs is to recklessly disregard a substantial risk of serious

harm." Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009) (quoting Estelle, 429 U.S. at 104-05).

Allegations of "[m]ere negligence or mere disagreement about the course of proper treatment" do

not rise to the level of deliberate indifference. Smith v. Municipality of Lycoming County, 335

F. App'x 150, 153 (3d Cir. 2009) (citing White v. Napoleon, 897 F.2d 103, 108 (3d Cir. 1990)).

Examining Plaintiff's allegations about his medical condition on August 28, 2008, we

find that Plaintiff has alleged a serious medical need but has failed to show that McDonald was

deliberately indifferent to those needs. Plaintiff awoke on the morning of August 28, 2008, in

pain, starving, and dizzy. He then collapsed in front of his cell and four hours later, while he was

semi-conscious, he was taken to the dispensary in a wheelchair. When he arrived, the nurses

checked his breathing, pulse rate, and blood pressure, and gave him an EKG. McDonald then

provided Plaintiff with a smock, a blanket, and a foodloaf, and placed him in a hardcell on

_____

excuse Plaintiff's failure to include her name in the initial grievance. (Initial Review Resp. to
No. 242054, Oct. 1, 2008, Pl.'s Resp. to Def. McDonald's Br. Ex. AA.); see Spruill v. Gillis, 372
F.3d 218, 234 (3d Cir.2004) (explaining that a prison can "excuse an inmate's failure to [name
the persons accused of wrongdoing] by identifying the unidentified persons and acknowledging
that they were fairly within the compass of the prisoner's grievance").

suicide watch.  According to Plaintiff's own allegations, McDonald was aware of Plaintiff's

medical needs and treated them when he entered the dispensary.  McDonald did not

"intentionally refuse" to provide treatment or "fail to exercise medical judgment."  See Mendez

v. Pa. Dep't of Corrs., 233 F. App'x 159, 160-61 (3d Cir. 2007).  Plaintiff's primary contention is

that he did not receive the treatment or diagnosis that he believed to be proper, however, a

disagreement about the proper course of treatment does not constitute deliberate indifference.

See Smith, 335 F. App'x at 153.  Accordingly, Plaintiff's claim against Defendant McDonald is

dismissed.

      B.     Fourteenth Amendment Claims

Plaintiff alleges that he was subject to disciplinary confinement without the guarantees of

the Fourteenth Amendment right to procedural due process.  "[P]rocedural due process rights are

triggered by the deprivation of a legally cognizable liberty interest."  Mitchell v. Horn, 318 F.3d

523, 531 (3d Cir. 2003).  If a prisoner "[did not have a ] protected liberty interest in remaining

free of disciplinary custody, then the state owed him no process before placing him in

disciplinary confinement."  Id.  A liberty interest "generally arise[s] either from the Due Process

Clause or from state-created statutory entitlement."  Williams v. Campbell, No. 07-885, 2008

WL 2816089, at *8 (E.D. Pa. July 18, 2008) (quoting Fraise v. Terhune, 283 F.3d 506, 522 (3d

Cir. 20002)).  With respect to liberty interests arising from the Due Process Clause, "as long as

the conditions or degree of confinement to which the prisoner is subjected is within the sentence

imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause

does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Id.

(quoting Fraise, 283 F.3d at 522).  For state-created liberty interests, "[a] deprivation occurs

when the prison 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Mitchell, 318 F.3d at 531 (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). "[T]he baseline for determining what is 'atypical and significant' . . . is ascertained by what a sentenced inmate may reasonably expect to encounter as a result of his or her conviction in accordance with due process of law." Burgos v. Canino, 641 F. Supp. 2d 443, 462 (E.D. Pa. 2009) (quoting Griffin v. Vaughn, 112 F.3d 703, 706 (3d Cir. 1997)). Thus, we must consider "the duration of the disciplinary confinement and the conditions in relation to other prison conditions." Mitchell, 318 F.3d at 532 (citing Shoats v. Horn, 213 F.3d 140, 144 (3d Cir. 2000)). This assessment is a "fact-intensive" inquiry. Id.; see also Pressley v. Blaine, 352 F. App'x 701, 705 (3d Cir. 2009). We now consider each of Plaintiff's due process claims.

####    1.    False Charges

Plaintiff claims that Defendants Daniels and White violated his right to procedural due process by filing false charges against him. (Compl. ¶¶ 8, 13.) The Commonwealth Defendants assert that this claim must be dismissed pursuant to Rule 12(b)(6) because a hearing process was made available to and used by Plaintiff, and Plaintiff fails to allege that Daniels and Whites acted out of retaliation. (Commonwealth Defs.' Mem. 6.) "The filing of charges, even those later proven to be false, is not a constitutional violation so long as the inmate is provided with due process, unless the charges were filed in retaliation for the exercise of a constitutional right." Acosta v. McGrady, No. 96-2874, 1999 WL 158471, at *4 (E.D. Pa. Mar. 22, 1999) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir.1986), and Flanagan v. Shively, 783 F.Supp. 922, 931-32 (M.D. Pa. Jan. 16, 1992), aff'd, 980 F.2d 722 (3d Cir.1992)). Plaintiff does not allege that Daniels and White filed these charges in retaliation for exercising a constitutional right.

However, as discussed below, Plaintiff has sufficiently pled that he was denied adequate process at his disciplinary hearing, and therefore this Court finds that Plaintiff's Fourteenth Amendment claims against Defendants Daniels and White must proceed to discovery.

        2.        Disciplinary Hearing and Disciplinary Confinement

Plaintiff alleges that Defendant Canino violated his Fourteenth Amendment right to due process by failing to give him a fair hearing, failing to question Defendant White as a witness, finding him guilty of false charges, not providing any "evidence or reasons" in a findings of facts report, and giving him an excessive punishment. (Compl. ¶¶ 18, 21.) The Commonwealth Defendants argue that Plaintiff has failed to state a Fourteenth Amendment claim against Canino because Canino relied on detailed misconduct reports as evidence and Plaintiff had an opportunity to challenge the fairness of the hearing. (Commonwealth Defs.' Mem. 9.) Plaintiff also brings Fourteenth Amendment claims against Defendants Pallott, Butler, Everding, Toluba, Marsh, McMichael, Vaughn, Wassel, MacGregor, and Sutton, alleging that they deprived him of his basic necessities without the guarantees of due process. (Compl. ¶¶ 85, 86.) The Commonwealth Defendants only respond that Plaintiff's allegations against these Defendants do not implicate due process protections. (Commonwealth Defs.' Mem. 11, 14, 16; Def. Vaughn's Mem. 7.)

Considering first whether Plaintiff has a protected liberty interest, Plaintiff has alleged that he was detained for 810 days of disciplinary confinement in RHU, where he was deprived of food, showers, clean clothing, recreation time, and access to the law library for approximately three weeks. Although Plaintiff's disciplinary confinement, without more, probably does not implicate a liberty interest, see Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002) (citing

16

Sandin, 515 U.S. at 486), Plaintiff has alleged that the conditions of this confinement, at least for the initial period of his stay in RHU, violated the Eighth Amendment; as such, Plaintiff has sufficiently pled that he was deprived of a liberty interest.  See Pressley, 352 F. App'x at 706 (finding that district court was required to examine conditions of plaintiff's 1,080 days of confinement before determining whether plaintiff was deprived of a liberty interest, and remanding for further inquiry into actual conditions); cf. Williams, 2008 WL 2816089, at *9 (finding that plaintiff had not been deprived of a liberty interest because, among other reasons, conditions of disciplinary confinement did not violate Eighth Amendment).  Therefore, Plaintiff has alleged that Defendants Canino, Pallott, Butler, Everding, Toluba, Marsh, McMichael, and Vaughn have deprived him of a liberty interest that triggers his right to due process, however, Plaintiff's claims against Defendants Wassel, MacGregor, and Sutton are dismissed, as the actions of these Defendants did not rise to the level of a constitutional violations.

Because Plaintiff has alleged that he was deprived of a liberty interest, we must next determine whether Plaintiff has stated a claim that he was denied adequate process during his disciplinary proceeding.  Pressley, 352 F. App'x at 705.  In a prison disciplinary proceeding, a prisoner is entitled to "advance written notice of the charges, a written statement by the fact-finder identifying the evidence relied upon and reason for the disciplinary action taken, and the opportunity to present evidence and call witnesses."  Whittington v. Vaughn, 289 F. Supp. 2d 621, 626 (E.D. Pa. 2003) (citing Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)); see also Smith, 293 F.3d at 653-54.  "[T]he decisions of a disciplinary board meet due process requirements so long as there is 'some evidence' supporting the decision."  Id. at 627 (quoting Superintendent Mass. Corr. Inst. at Walpole v. Hill, 472 U.S. 445, 455-56 (1985)).

17

At this stage of the proceedings, this Court finds that Plaintiff has stated a Fourteenth Amendment claim against Defendants Canino, Pallott, Butler, Everding, Toluba, Marsh, McMichael, and Vaughn. Plaintiff was informed of the misconduct charges against him and attended a hearing before Canino on May 23, 2008. Plaintiff made arguments on his behalf and presented as evidence a videotape of the incident, which Canino watched before issuing her ruling. Furthermore, Canino's findings report states that she watched the tape and saw Plaintiff pull White to the floor. (Compl. ¶ 16; Hr'g Reports, May 23, 2008, Commonwealth Defs.' Mem. Exs. A & B.) However, Plaintiff was denied the opportunity to present White as a witness. Plaintiff was interested in questioning White because White did not author the misconduct reports but gave false statements to Daniels, who documented these statements in the reports. (Pl.'s Resp. to Commonwealth Defs.' Mem. 6.) "'[P]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority.'" Smith v. Blaine, No. 89-4644, 1992 WL 20219, at *4 (E.D. Pa. Jan. 27, 1992) (quoting Wolff, 418 U.S. at 566). However, this discretion is "not without limits," and "prison officials must 'explain in a limited manner, the reason why witnesses were not allowed to testify." Id. (quoting Ponte v. Real, 471 U.S. 491, 499 (1985)). The Commonwealth Defendants state that Canino denied Plaintiff's request to call White to testify because White "authored the report which contained [her] version of the facts that formed the basis of the misconduct." (Commonwealth Defs.' Mem. 8-9.) However, nothing in the Complaint supports this reasoning, and no evidence that we may properly consider on a Rule 12(b)(6) motion has been presented to support this argument. Moreover, the case that the Commonwealth Defendants rely upon to support this reasoning, Whittington v. Vaughn, 289 F.

Supp. 2d 621 (E.D. Pa. 2003), was a ruling on the defendants' motion for summary judgment, not a motion to dismiss. Therefore, Plaintiff had sufficiently pled a due process claim against Defendants Canino, Pallott, Butler, Everding, Toluba, Marsh, McMichael, and Vaughn to survive a motion to dismiss.

Additionally, Plaintiff claims that Defendant DiGuglielmo violated his right to due process by failing to correct the violations allegedly committed by Defendant Canino during the disciplinary hearing. (Compl. ¶ 23.) The Commonwealth Defendants argue that Plaintiff's claim fails because he does not allege any involvement by DiGuglielmo. (Commonwealth Defs.' Mem. 5.) As previously explained, "for a supervisor to face responsibility, she must be personally involved in the alleged wrongs." Kantamanto v. King, 651 F. Supp. 3d 313, 326 (E.D. Pa. 2009). "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence," and these allegations "must be made with appropriate particularity." Id. (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)). For a failure to supervise claim, the plaintiff must show that "the defendant 'exhibited deliberate indifference to the plight of the person deprived.'" Id. (quoting Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)). "To show deliberate indifference, the plaintiff must 'identify a specific supervisory practice that the defendant failed to employ and allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.'" Id. (quoting C.H. ex rel Z.H. v. Oliva, 226 F.3d 198, 201-02 (3d Cir. 2000) (internal quotations omitted)). Plaintiff only alleges that DiGuglielmo failed to correct the violations committed by Canino at the disciplinary hearing, but this

conclusory statement does not satisfy the pleading requirement of a supervisory liability claim. This Court grants Plaintiff leave to amend his Complaint to cure the pleading deficiency as to this claim. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile."). This Court notes that Plaintiff is granted leave to amend this claim and not his Eighth Amendment claim against DiGuglielmo because an amendment to cure the deficiency in his Eighth Amendment claim would be futile, since the underlying conduct that DiGuglielmo approved was not in violation of the Eighth Amendment. See id.

C.     Sixth Amendment Claim

Plaintiff alleges that Defendant Canino also violated the Sixth Amendment by failing to give him a proper disciplinary hearing. (Compl. ¶ 18.) The Commonwealth Defendants correctly argue that this claim must be dismissed because the Sixth Amendment does not apply to prison disciplinary hearings. "The Sixth Amendment guarantees apply only to criminal prosecutions." Urbanski v. Horn, No. 97-4647, 1998 WL 661531, at *7 (E.D. Pa. Sept. 25, 1998) (citing Kirby v. Illinois, 406 U.S. 682, 690 (1972)). "Prison disciplinary proceedings are not criminal prosecutions within the meaning of the Sixth Amendment." Id. (citing Wolff v. McDonnell, 418 U.S. 539, 556 (1974)). Therefore, Plaintiff's Sixth Amendment claim against Defendant Canino is dismissed.

D.     Retaliation Claims

Plaintiff claims that Defendants Pallott, Wassel, Sutton, MacGregor, and Vaughn retaliated against him for filing grievances about his conditions of confinement in RHU. (Compl. ¶ 86.) The Commonwealth Defendants argue that Plaintiff has failed to state a claim of retaliation because the alleged adverse action by prison officials did not chill Plaintiff's filing of grievances, and the adverse actions begun prior to the protected activity. (Commonwealth Defs.' Mem. 12-13; Def. Vaughn's Mem. 3.) To maintain a claim for retaliation under § 1983, a plaintiff must show "(1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." Burgos v. Canino, 641 F. Supp. 2d 443, 453 (E.D. Pa. 2009) (quoting Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotations omitted)). To satisfy the third element, a plaintiff must allege that the exercise of his constitutional right was a "substantial and motivating factor" in the decision to take adverse action against him. Booth v. Pence, 354 F. Supp. 2d 553, 560 (E.D. Pa. 2005) (quoting Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001)). "If a prisoner sufficiently establishes a causal connection, prison officials may 'overcome this element by demonstrating that the same action would have been taken in the absence of the protected activity.'" Burgos, 641 F. Supp. 2d at 454 (quoting Rauser, 241 F.3d at 333-34).[9]

Plaintiff has stated a retaliation claim against Defendant Pallott. Plaintiff first sent a letter to OPR about his treatment in RHU in or around the end of June 2008, and on August 4, 2008,

---

[9] The Commonwealth Defendants concede that Plaintiff has satisfied the first element by filing grievances against the Commonwealth Defendants. See Booth v. King, 346 F. Supp. 2d 751, 762 (E.D. Pa. 2004).

the Commonwealth Defendants learned of Plaintiff's complaints when OPR sent an officer to interview Plaintiff. (Compl. ¶¶ 45-47.) Subsequently, Pallott stated, "He wrote us up!" (Id. at ¶ 48.) On August 28, 2008, when Plaintiff collapsed in front of his cell, Pallott instructed another officer to place a sickcall slip in Plaintiff's door and leave him on the floor. When Plaintiff returned to the RHU after his stay in the dispensary, Sutton told Plaintiff, "We're gonna make sure you die down here for what you've done and [Pallott's] gonna make sure to it!" (Id. at ¶ 71.) Plaintiff has alleged sufficient facts to satisfy the second element of the retaliation claim. A delay in providing medical treatment constitutes adverse action for purposes of a retaliation claim. See Cortlessa v. County of Chester, No. 04-1039, 2005 WL 2789178, at *6 (E.D. Pa. Oct. 26, 2005); see also Cooper v. Diggs, No. 07-1557, 2009 WL 1838335, at *4 (W.D. Pa. June 24, 2009) ("Surely the delay of arguably necessary medical treatment . . . based upon a desire to retaliate against Plaintiff for filing grievances . . . qualifies as an "adverse action" and is sufficient to state a retaliation claim even under Twombly."). Additionally, although Plaintiff continued to file grievances after being subjected to this adverse action, this Court finds that a delay in medical treatment would be "sufficient to deter a person of ordinary firmness" from filing grievances or exercising other constitutional rights. See Trautman v. County of Allegheny, No. 06-1037, 2009 WL 3030215, at *10 (W.D. Pa. Sept. 17, 2009) ("[A] delay or denial of medical treatment would likely deter an individual from making complaints or exercising his or her free speech rights[.]"). Moreover, Plaintiff has alleged a causal connection between his protected conduct and the delay of his medical treatment, thereby satisfying the third element of the retaliation claim. Plaintiff has alleged that Pallott knew that Plaintiff filed grievances against

the Commonwealth Defendants and that she was motivated by a "desire to punish" Plaintiff for filing these grievances. See Booth, 354 F. Supp. 3d at 360.

However, Plaintiff's retaliation claims against Defendants Vaughn, Wassel, MacGregor, and Sutton are dismissed because their conduct does not rise to the level of "adverse action." Following Plaintiff's interview with an OPR official, Vaughn denied Plaintiff his dinner on one occasion, and Wassel took Plaintiff's dinner tray away on another occasion while MacGregor observed. Additionally, Sutton verbally antagonized Plaintiff and attempted to have another inmate throw a cup of urine on him. Although Plaintiff may be able to demonstrate a causal connection between his protected activity and these actions, Plaintiff's claims fail because these acts do not constitute "adverse action" for purposes of a retaliation claim. "[E]vidence of a single incident of food tampering is insufficient as an adverse action," see Burgos, 641 F. Supp. 2d at 456 (citing Boulware v. Hill, No. 98-3876, 2000 1593989, at *2 (E.D. Pa. Oct. 24, 2000)), and "any use of words, including threatening or offensive language, does not constitute retaliatory action," id. (citing Maclean v. Secor, 876 F. Supp. 695, 698-99 (E.D. Pa. 1995)). Thus, Plaintiff cannot satisfy the second element of a retaliation claim against Defendants Vaughn, Wassel, MacGregor, and Sutton, and these claims are dismissed.

E.    Access to Courts Claims

1.    Missing Legal Materials

Plaintiff alleges that he was denied his right to access the courts because his legal materials, particularly his federal habeas corpus petition and supporting documents, were misplaced or stolen while under the supervision of Defendant Curran. (Compl. ¶¶ 92, 102, 117, 124.) The Commonwealth Defendants seek to dismiss Plaintiff's claim against Curran because

Plaintiff cannot show that he was deprived of a non-frivolous claim or that he suffered actual damage as a result of the loss of his documents. (Commonwealth Defs.' Mem. 16-17.) "Prisoners have a fundamental right to access the courts." Winn v. Dep't of Corrs., 340 F. App'x 757, 758 (3d Cir. 2009) (citing Lewis v. Casey, 518 U.S. 343, 346 (1996)).[10] "[A] prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury." Id. (citing Lewis, 518 U.S. at 352-53). "Actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts." Id. (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)). "[T]he underlying legal claim must either attack the plaintiff's conviction (whether on direct appeal or via a habeas petition) or challenge the conditions of confinement." Frazier v. Diguglielmo, 640 F. Supp. 2d 593, 598 (E.D. Pa. 2008) (citing Lewis, 518 U.S. at 354). Where a prisoner asserts that a defendant's actions "inhibited [his] opportunity to present a past legal claim," a prisoner must satisfy certain pleading requirements: the complaint must "describe the underlying claim," and it must "show that [the prisoner] has no other remedy that may be awarded as recompense for the lost claim other than in the present denial of access suit." Monroe v. Beard, 536 F.3d 198, 205-06 (3d Cir. 2008) (citing Harbury, 536 U.S. at 416-17).

Plaintiff has adequately pled an access to courts claim against Defendant Curran to survive a motion to dismiss. According to Plaintiff, all of his legal materials necessary to file a habeas corpus petition were lost or misplaced while in the custody of Curran, and as a result, his

---

[10] The constitutional basis for this right remains unsettled, see Christopher v. Harbury, 536 U.S. 403, 415 (2002), though the Third Circuit has recently stated that the First and Fourteenth Amendment guarantees prisoners a right of access to the courts. See Monroe v. Beard, 536 F.3d 198, 205 (3d Cir. 2008). Plaintiff has alleged both First and Fourteenth Amendment claims, however, the inquiry remains the same under both Amendments.

habeas petition was inadequate and he lost the opportunity to present a "meritorious" ineffective

assistance of counsel claim in his petition. (Compl. ¶¶ 89, 119.) Specifically, Plaintiff alleges

that an ineffective assistance of counsel claim for counsel's "failure to investigate, interview, and

present several witnesses at trial" was raised in his PCRA petition, but because Plaintiff did not

have his PCRA documents, he did not include this claim in his habeas petition. (Id. at ¶¶ 119-

21.) Plaintiff also alleges that he is barred from presenting this claim in the federal courts. (Id. at

¶ 120.) Therefore, Plaintiff has satisfied the pleading requirements for an access to courts

claim.[11]

### 2. Access to the Law Library

Plaintiff claims that Defendants Pallott, McMichael, Butler, Vaughn, Everding, Toluba,

and Marsh denied him access to the law library from May 22, 2008 until July 12, 2008. (Compl.

¶ 40.) The Commonwealth Defendants argue that this deprivation was temporary and does not

rise to the level of a constitutional violation.[12] (Commonwealth Defs.' Mem. 10; Def. Vaughn's

Mem. 7.) "A prisoner has a constitutional right to access the federal courts, and denial of access

to the prison law library may violate [the Constitution] insofar as it impedes meaningful access to

courts." Platt v. Brockenborough, 476 F. Supp. 2d 467, 470 (E.D. Pa. 2007) (citing Lewis v.

---

[11]     The record presently does not include Plaintiff's PCRA petition, habeas petition, or any
related documents, and therefore, we have not yet had the opportunity to determine whether
Plaintiff's claim is meritorious or frivolous as a matter of law.

[12]     Defendants construe Plaintiff's allegations about his access to the law library as an Eighth
Amendment claim, however, whether prison officials have denied an inmate access to the law
library does not constitute an Eighth Amendment claim, but rather a First Amendment or
Fourteenth Amendment access to courts claim. See Platt v. Brockenborough, 476 F. Supp. 2d
467, 470 (E.D. Pa. 2007); Gerber v. Sweeney, No. 02-241, 2003 WL 1090187, at *6 (E.D. Pa.
Mar. 7, 2003) (citing Williams v. Lehigh Dep't of Corrs., 79 F. Supp. 2d 514, 518 (E.D. Pa.
1999)). This Court considers Plaintiff's allegations accordingly.

<u>Casey</u>, 518 U.S. 343, 350-51 (1996)).  "Access to the prison law library is not a 'freestanding'

right, however, and a prisoner challenging the denial of access must allege some actual injury to

have standing to assert a claim on this basis."  <u>Id.</u> (citing <u>Lewis</u>, 518 U.S. at 350-51).  Plaintiff

has alleged that he was denied access to the law library during his initial stay in RHU, but

Plaintiff has not alleged that this denial caused any injury to him.  Thus, this claim must be

dismissed.

      F.     <u>Conspiracy Claims</u>

Plaintiff claims that Defendants Curran and Grunder conspired to conceal the

misplacement or theft of Plaintiff's legal materials and personal property.  (Compl. ¶ 126.)  The

Commonwealth Defendants argue that Plaintiff's conspiracy claim must be dismissed because

Plaintiff makes only general allegations and does not show that Curran and Grunder entered into

any agreement.  (Commonwealth Defs.' Mem. 19.)  "To support a claim for conspiracy under

Section 1983, [a] [p]laintiff must show '(1) the existence of a conspiracy involving state action

and (2) deprivation of civil rights in furtherance of such conspiracy by each party to the

conspiracy.'"  <u>Hughes v. Smith</u>, No. 03-5035, 2005 WL 435226, at * 5 (E.D. Pa. Feb. 24, 2005)

(quoting <u>Marchese v. Umstead</u>, 110 F. Supp. 2d 361, 370 (E.D. Pa. 2000)).  "With respect to the

first prong, '[t]o sufficiently allege a conspiracy, a plaintiff must show 'a combination of two or

more persons to do a criminal act, or to do a lawful act by unlawful means or for an unlawful

purpose.'"  <u>Id.</u> (quoting <u>Panayotides v. Rabenold</u>, 35 F. Supp. 2d 411, 419 (E.D. Pa. 1999)); <u>see

also</u> <u>Walker v. Hensley</u>, No. 08-0685, 2009 WL 5064357, at *8 (E.D. Pa. Dec. 23, 2009) ("It is

not sufficient to simply make 'conclusory allegations of concerted action but be devoid of facts

actually reflecting joint action.'" (quoting <u>Abbott v. Latshaw</u>, 164 F.3d 141, 148 (3d Cir. 1998))).

"[T]here can be no liability for a conspiracy to violate Section 1983 without an actual violation." Hughes, 2005 WL 435226, at *5 (quoting Holt Cargo Sys., Inc. v. Del. River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998)).

Although we have previously found that Plaintiff has adequately alleged that Curran violated his right of access to the courts by misplacing his legal materials, Plaintiff has not alleged anything beyond conclusory allegations to show that Curran and Grunder "reached an agreement to deprive him of [this] constitutional right under color of law." Burgos v. Canino, 641 F. Supp. 2d 443, 458 (E.D. Pa. 2009). Plaintiff only states that Grunder "showed deliberate indifference by conspiring" with Curran, but "the mere incantation of the words 'conspiracy' or 'acted in concert' does not satisfy the pleading requirement of a conspiracy claim." Walker, 2009 WL 5064357, at *8. This Court grants Plaintiff leave to amend his Complaint to cure the pleading deficiency as to his conspiracy claim. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

IV.     CONCLUSION

Accordingly, Defendants' Motions to Dismiss (Doc. Nos. 14, 15, 22, & 30) are DENIED in part and GRANTED in part. An order consistent with this Memorandum follows.